UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------------X   Case No. 22-cv-10276
RODOLFO PEREIRA,

                                Plaintiff,              **COMPLAINT**

      -against-

WHITEHALL PROPERTIES, LLC, PAN AM EQUITIES    **PLAINTIFF DEMANDS**
INC, WHITEHALL PROPERTIES II LLC and JOHN    **A TRIAL BY JURY**
DiPAOLA Individually,

                               Defendants.
---------------------------------------------------------------------X

Plaintiff, RODOLFO PEREIRA by his attorneys, SEKENDIZ LAW FIRM P.C., upon information and belief, complains as follows:

## NATURE OF THE CASE

1. Plaintiff brings this action charging that Defendants violated the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101, et seq. ("ADA"), "the Act", to recover lost wages, and an additional amount as liquidated damages, reasonable attorneys' fees and costs, and to remedy violations of state common law based upon the pendent jurisdiction of this Court pursuant to Gibb, 38 U.S. 715 (1966), and 28 U.S.C. §1367; ; the New York State Human Rights Law, New York State Executive Law §296 *et. seq.* ("NYSHRL"), and the New York City Human Rights Law, Administrative Code § 8-107, *et seq*. ("NYCHRL"), and seeks to recover lost wages, emotional distress, punitive damages, reasonable attorneys' fees and costs as a result of being discriminated against on the basis his disability/perceived disability and retaliation.

## JURISDICTION AND VENUE

2. Jurisdiction of this Court is proper under 42 U.S.C. § 2000e-5(f)(3), 29 U.S.C. § 626(c), and

28 U.S.C. §§ 1331 and 1343.

3. The Court has supplemental jurisdiction over the claims of Plaintiff brought under state law pursuant to 28 U.S.C. § 1367.

4. The Court also has jurisdiction pursuant to 42 U.S.C. §12101 et. Seq.; 29 U.S.C. §2617; 28 U.S.C. §1331, §1343 and pendent jurisdiction thereto.

5. Jurisdiction is also conferred upon this Court by 28 U.S.C. Sect. 1331; and 28 U.S.C. Sect. 1343., 28 U.S.C. § 1337 (interstate commerce). Supplemental jurisdiction over Plaintiffs' state law claims is conferred by 28 U.S.C. § 1367 (a).

6. This action involves questions of federal law. 28 U.S.C. § 1331

7. Venue is proper in this district based upon Defendants' principal place of business within the Southern District of New York. 28 U.S.C. §1391(b).

## PROCEDURAL PREREQUISITES

8. Plaintiff filed charges of discrimination upon which this Complaint is based with the Equal Employment Opportunities Commission ("EEOC").

9. Plaintiff filed a charge with EEOC on June 17, 2022.

10. EEOC issued the charge number 520-2022-07235 to this case.

11. Plaintiff has not received the right to sue letter yet.

## PARTIES

12. Plaintiff RODOLFO PEREIRA ("PLAINTIFF") is a resident of the County of Queens and State of New York.

13. Plaintiff is a disabled individual as defined under the laws of ADA. More specifically, on or about January 15, 2018, Plaintiff suffered a heart attack and he has an ongoing heart condition

14. Plaintiff was a disabled individual defined under the laws of ADA because on or about

December 26, 2021, Plaintiff was diagnosed with COVID-19.

15. Plaintiff qualified for the position because he only needed reasonable accommodation to complete his job tasks.

16. Defendant. WHITEHALL PROPERTIES, LLC ("WHP") is a domestic corporation duly existing pursuant to, and by virtue of, the laws of the State of New York, with its principal place of business located at 18 East 50th Street 10th Floor, New York, NY, United States, 10022.

17. Defendant PAN AM EQUITIES INC ("PAE") is a domestic business corporation duly existing pursuant to, and by virtue of, the laws of the State of New York, with its principal place of business located at 18 East 50th Street 10th Floor, New York, NY, United States, 10022.

18. Defendant. WHITEHALL PROPERTIES II LLC ("WHII") is a domestic corporation duly existing pursuant to, and by virtue of, the laws of the State of New York, with its principal place of business located at 18 East 50th Street 10th Floor, New York, NY, United States, 10022.

19. Defendants "WHP", "PAE" and "WHII" jointly employed Plaintiff within the meaning of Federal and New York State Laws.

20. Plaintiff was, at all times relevant, a full-time employee of "WHP."

21. Plaintiff was at all times relevant, a full-time employee of "PAE."

22. Plaintiff was at all times relevant, a full-time employee of "WHII."

23. Defendant "WHP". had authority to hire and fire Plaintiff.

24. Defendant "WHP" had authority to supervise and control Plaintiff's work.

25. Defendant "WHP" had authority to control Plaintiff's employment records.

26. Defendant "WHP" determined and/or approved the Plaintiff's rate and method of pay

3

27. Defendant "PAE" had authority to hire and fire Plaintiff.

28. Defendant "PAE" had authority to supervise and control Plaintiff's work.

29. Defendant "PAE" had authority to maintain Plaintiff's employment records.

30. Defendant "PAE" determined and/or approved the Plaintiff's rate and method of pay.

31. Defendant "WHII" had authority to hire and fire Plaintiff.

32. Defendant "WHII" had authority to supervise and control Plaintiff's work.

33. Defendant "WHII" had authority to maintain Plaintiff's employment records.

34. Defendant "WHI" determined and/or approved the Plaintiff's rate and method of pay.

35. Defendant JOHN DiPAOLA (Hereinafter referred to "JP") is an individual who lives in the State of New York.

36. Defendant "JP" was and still is employed by "WHP."

37. Defendant "JP" was and still is employed by "PAE."

38. Defendant "JP" was and still is employed by "WHI."

39. Defendant "JP" had authority to hire and fire Plaintiff.

40. Defendant "JP" had authority to supervise and control Plaintiff's work.

41. Defendant "JP" had authority to maintain Plaintiff's employment records.

42. Defendant "JP" determined and/or approved the Plaintiff's rate and method of pay.

43. Defendant "JP" was Plaintiff's manager.

44. Plaintiff's W-2 form lists WHITEHALL PROPERTIES, LLC C/O PAN AM EQUITIES INC as Plaintiff's employer.

## MATERIAL FACTS

45. . Plaintiff was employed by "WHP" as a handyman with an annual salary of $64,000.00.

46. Plaintiff was initially hired by "WHP" in 2002.

47. Plaintiff was employed by "PAE" as a handyman with an annual salary of $64,000.00.

48. Plaintiff was initially hired by "PAE" in 2002.

49. Plaintiff was employed by "PAE" as a handyman with an annual salary of $64,000.00.

50. Plaintiff was initially hired by "PAE" in 2002.

51. Plaintiff was employed by "WHII" as a handyman with an annual salary of $64,000.00.

52. Plaintiff was initially hired by "WHII" in 2002.

53. Plaintiff's job location was 60 West 23rd Street, New York, New York 10010.

54. On January 3, 2022, Plaintiff was terminated from his position.

55. On or about January 15, 2018, Plaintiff suffered a heart attack. The reason for Plaintiff's heart attack was over exertion from shoveling snow all day long on two of the snowiest days in New York. During the time Plaintiff asked his boss "JP" if he could use the snow blowers which were new, and "JP" denied Plaintiff's request causing Plaintiff to sustain a heart attack.

56. On or about February 26, 2018, Plaintiff's doctor provided Plaintiff with a doctor's note indicating that Plaintiff could go back to work. More specifically Plaintiff was scheduled to start working on April 3, 2018, but Plaintiff was not allowed to lift anything heavier than 25 pounds and shoveling was also prohibited. On or about February 26, 2018, Plaintiff's boss "JP" denied Plaintiff's accommodation request indicating Job of a handyman required lifting more than 25 pounds. and that Plaintiff was welcome to work with no restrictions.  After Plaintiff returned to work in April of 2018 until his last date of work in late December of 2021, Plaintiff noticed that defendant "JP's" demeanor become to change towards Plaintiff and Plaintiff's job duties also started to be altered.  More specifically starting from April of 2018 until December of 2021, approximately two to three times a week, Plaintiff had to

perform bigger jobs needing two people to effectively disassemble and replace apartment appliances such as refrigerators weighting 300 pounds, stoves waiting 250 pounds, dishwashers weighting 150 pounds, washer and dryer weighting 300 pounds which were extremely heavy for one person to perform. Plaintiff's objections to his boss "JP" concerning extremely heavy lifting fell on deaf ears and instead the defendant "JP" humiliated Plaintiff every time Plaintiff completed a task calling Plaintiff "Good Boy" as if he was referring to a pet dog.

57. Defendants could reasonably accommodate Plaintiff by assigning lighter tasks to Plaintiff such as cleaning facilities, performing maintenance jobs and light repairs, painting services, perform lightning installation, repairing equipment and various machines and appliances instead of requiring Plaintiff to disassemble and move extremely heavy appliances.

58. Defendants could reasonably accommodate Plaintiff by providing with a helper or helpers when an extremely heavy appliance needed to be moved but they chose not to accommodate Plaintiff.

59. On or about December 19, 2021, Plaintiff's son Bryan took a covid test.

60. On or about December 22, 2021, Plaintiff's son's PCR results came positive.

61. On or about December 25,2021, Plaintiff called "JP" indicating that he was not feeling well and that he was going to take the COVID test. Although Plaintiff informed his boss "JP" about his situation that Plaintiff was not feeling well, "JP" via an email to the receptionist instructed Plaintiff to work with the mask. On or December 26, 2021, Plaintiff took a rapid Covid test, and the results came back positive. On or about December 26, 2021, Plaintiff's doctor provided Plaintiff with a doctor's note indicating. Plaintiff could return to work on January 5, 2022. On or about December 26, 2022, Plaintiff informed the "JP" indicating that

he was diagnosed with COVID-19. On or about December 29, 2021, during a telephone conversation, Plaintiff's boss "JP" asked Plaintiff to report to work for December 31, 2021, morning shift despite knowing that Plaintiff was diagnosed with COVID-19. Plaintiff advised his boss "JP" that his doctor wrote a letter indicating "Patient may return to work as of January 5, 2022, and must wear a mask upon returning" again. Plaintiff further advised his boss that Plaintiff was not feeling well, and that Plaintiff was exhibiting the symptoms of COVID-19. Plaintiff's boss "JP" advised Plaintiff that New York City will only cover 5 days of quarantine pay and the remainder will be deducted out of Plaintiff's sick and vacation dates if Plaintiff chose to stay home instead of reporting to work. Plaintiff said to "JP" "You may deduct these days from sick and vacation dates or not pay me because I'm not physically ready to go back." Plaintiff also informed defendant "JP" that Plaintiff was going to be taking another COVID-19 test. On December 30, 2021, "JP" advised Plaintiff to stop by the building and bring the test results personally to him in the building which Plaintiff used to work. On or about December 30, 2021, to comply with his boss" JP's" orders, Plaintiff went to the building which he used to work and dropped the positive test results to concierge to be given to "JP." During this time, Plaintiff was fully masked. On or about January 3, 2022, "JP" told Plaintiff not to report to work indicating "We will be sending you a letter informing you of the status of your employment." Subsequently Plaintiff received a letter of termination from his boss which were dated January 3, 2022, indicating that Plaintiff reported to the building while Plaintiff had COVID-19 alleging a "health and safety" violation. The defendant 'JP" set Plaintiff up for Plaintiff's planned termination. Plaintiff was terminated from his position because the defendants did not want to accommodate Plaintiff's disabilities. The defendant "JP" had Plaintiff work on December 25, 2021, when Plaintiff told him that

7

his son was diagnosed with Covid-19 and that Plaintiff was not feeling well. Plaintiff was not causing a health or safety risk on December 25, 2021, when Plaintiff was required to work but he became a health and safety hazard when Plaintiff stopped by the building to deliver his positive COVID 19 test results as per the directives his boss John gave to Plaintiff. Plaintiff was also not a "health and safety" hazard when his boss "JP" instructed Plaintiff to report to work on December 31, 2022, knowing that Plaintiff was diagnosed with COVID-19.

62. Defendants terminated Plaintiff because Plaintiff refused to report to work while he was diagnosed with COVID-19 exhibiting the following symptoms palpitations, dizziness, chest pain, shortness of breath and weakness concerning his heart condition.

63. Upon information and belief, Plaintiff's work performance was above the average during his employment with the defendants.

64. The defendant 'WHP" discriminated against Plaintiff because Plaintiff was and is disabled.

65. The defendant 'PAE" discriminated against Plaintiff because Plaintiff was and is disabled.

66. The defendant 'WHII" discriminated against Plaintiff because Plaintiff was and is disabled.

67. The defendant 'JP" discriminated against Plaintiff because Plaintiff was and is disabled.

68. Defendants "PAE", "WHP" "WHII" and "JP" discriminated against Plaintiff because of Plaintiff's perceived disability.

69. The defendant 'WHP" retaliated against Plaintiff by terminating him from his position because Plaintiff refused to go to work when he was diagnosed with COVID-19 exhibiting the following symptoms palpitations, dizziness, chest pain, shortness of breath and weakness concerning his heart condition.

70. The defendant 'PAE" retaliated against Plaintiff by terminating him from his position because Plaintiff refused to go to work when he was diagnosed with COVID-19 exhibiting

the following symptoms palpitations, dizziness, chest pain, shortness of breath and weakness concerning his heart condition.

71. The defendant 'WHII" retaliated against Plaintiff by terminating him from his position because Plaintiff refused to go to work when he was diagnosed with COVID-19 exhibiting the following symptoms palpitations, dizziness, chest pain, shortness of breath and weakness concerning his heart condition.

72. The defendant 'JP" retaliated against Plaintiff by terminating him from his position because Plaintiff refused to go to work when he was diagnosed with COVID-19 exhibiting the following symptoms palpitations, dizziness, chest pain, shortness of breath and weakness concerning his heart condition.

73. Plaintiff qualified for the position and Plaintiff would be able to comply with the essential functions of the job with reasonable accommodations.

74. The defendant "WHP" terminated Plaintiff five (5) days after Plaintiff advised defendant "JP" that he could not report to work because he was diagnosed with COVID-19 combined with a heart condition.

75. The defendant "PAE" terminated Plaintiff five (5) days after Plaintiff advised defendant "JP" that he could not report to work because he was diagnosed with COVID-19 combined with a heart condition.

76. The defendant "WHII" terminated Plaintiff five (5) days after Plaintiff advised defendant "JP" that he could not report to work because he was diagnosed with COVID-19 combined with a heart condition

77. The defendant "JP" terminated Plaintiff five (5) days after Plaintiff advised defendant "JP" that he could not report to work because he was diagnosed with COVID-19 combined with a heart

condition.

78. Defendants "PAE", "WHP" "WHII" and "JP" terminated Plaintiff from his position because of Plaintiff's perceived disability.

79. Defendant "JP" deceived Plaintiff by asking Plaintiff to personally bring the doctor notes to "JP" in the building which Plaintiff worked to terminate Plaintiff for alleged "Health & Safety" violations because Plaintiff did not want to report to work on December 31, 2021 because Plaintiff was required to stay home by his doctor until January 5, 2022, due to the fact that Plaintiff was diagnosed with COVID-19 and that Plaintiff had a heart condition.

80. EEOC noted that COVID-19 can exacerbate other health conditions which result in an employee being disabled for purposes of the ADA. For example, COVID-19 may cause an individual to suffer heart inflammation (or make an existing minor heart condition worse), suffer a stroke or develop diabetes. In these instances, the employee will be considered to be disabled under the ADA.

81. Plaintiff's performance was, upon information and belief, above average during the course of his employment.

82. Plaintiff has been unlawfully discriminated against, humiliated, and degraded, and as a result, suffers loss of rights, emotional distress, loss of income and earnings.

83. Defendant "WHP's" actions and conduct were intentional and intended to harm Plaintiff.

84. Defendant' "PAE''s" actions and conduct were intentional and intended to harm Plaintiff.

85. Defendant "WHII's" actions and conduct were intentional and intended to harm Plaintiff.

86. Defendant "JP's actions and conduct were intentional and intended to harm Plaintiff.

87. As a result of the defendants' actions, Plaintiff feels extremely humiliated, degraded, victimized, embarrassed, and emotionally distressed.

88. As a result of the Defendants discriminatory treatment of Plaintiff has suffered severe emotional distress and physical ailments.

89. As a result of the acts and conduct complained of herein, Plaintiff has suffered and will continue to suffer the loss of income, the loss of a salary, bonuses, benefits and other compensation which such employment entails, and Plaintiff has also suffered future pecuniary losses, emotional pain, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses.

90. As a result of the above, Plaintiff has been damaged in an amount in excess of the jurisdiction of the Court.

91. Defendants conduct has been malicious, willful, outrageous, and conducted with full knowledge of the law.  As such, Plaintiff demands Punitive Damages as against all Defendants, jointly and severally.

92. Defendants exhibited a pattern and practice of discrimination.

## AS A FIRST CAUSE OF ACTION FOR DISCRIMINATION UNDER THE AMERICANS WITH DISABILITIES ACT

93. Plaintiff repeats and realleges each and every paragraph above as if said paragraphs were more fully set forth herein at length.

94. Plaintiff claims that Defendants violated the Americans with Disabilities Act of 1990 (Pub. L. 101-336) ("ADA"), as amended, as these titles appear in volume 42 of the United States Code, beginning at section 12101.

95. Title 42 of the Americans with Disabilities Act of 1990, Chapter 126, Subchapter I, Section 12112, Discrimination [Section 102] states: "(a) General rule. - No covered entity shall discriminate against a qualified individual on the basis of disability in regard to job

application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment."

96. Defendant "WHP" engaged in an unlawful discriminatory practice by discriminating against Plaintiff because of his disability/perceived disability.

97. Defendant "WHII" engaged in an unlawful discriminatory practice by discriminating against Plaintiff because of his disability/perceived disability.

98. Defendant "PAE" engaged in an unlawful discriminatory practice by discriminating against Plaintiff because of his disability/perceived disability

99. As such, Plaintiff has been damaged as set forth herein.

**AS A SECOND CAUSE OF ACTION UNDER 42 U.S.C. § 12203 FOR RETALIATION**

100. Plaintiff repeats and realleges each and every paragraph above as if said paragraphs were more fully set forth herein at length.

101. Section 42 U.S.C. § 12203 - Prohibition against retaliation and coercion partially reads as follows: " (a) Retaliation - No person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter."

102. Defendants "PAE", "WHP" "WHII" violated this section by terminating Plaintiff from his position after Plaintiff complained.

**AS A THIRD CAUSE OF ACTION FOR DISCRIMINATION
UNDER THE NEW YORK CITY ADMINISTRATIVE CODE**

103. Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

104. The Administrative Code of City of NY § 8-107 [1] provides that, "It shall be an unlawful discriminatory practice: (a) For an employer or an employee or agent thereof, because of the actual or perceived age, race, creed, color, national origin, gender, **disability**, marital status, sexual orientation or alienage or citizenship status of any person, to refuse to hire or employ or to bar or **to discharge from employment** such person or to discriminate against such person in compensation or in terms, conditions or privileges of employment."

105. Defendant "WHP" violated the section cited herein as set forth.

106. Defendant "WHII" violated the section cited herein as set forth.

107. Defendant "PAE" violated the section cited herein as set forth.

108. Defendant "JP" violated the section cited herein as set forth.

### AS A FOURTH CAUSE OF ACTION FOR DISCRIMINATION UNDER THE NEW YORK CITY ADMINISTRATIVE CODE

109. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

110. The New York City Administrative Code Title 8, §8-107(7) provides that it shall be unlawful discriminatory practice: "It shall be an unlawful discriminatory practice for any person engaged in any activity to which this chapter applies to retaliate or discriminate in any manner against any person because such person has (i) opposed any practice forbidden under this chapter, (ii) filed a complaint, testified or assisted in any proceeding under this chapter (iii) ……"

111. Defendants "PAE", "WHP" "WHII and "JP" engaged in an unlawful discriminatory practice in violation of New York City Administrative Code Title 8, §8-107(7) by discriminating against the Plaintiff because of Plaintiff's opposition to the unlawful employment practices of Plaintiff's employer.

## AS A FIFTH CAUSE OF ACTION FOR DISCRIMINATION
## <u>UNDER THE NEW YORK CITY ADMINISTRATIVE CODE</u>

112. Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

113. New York City Administrative Code Title 8-107(13) **<u>Employer liability</u>** for discriminatory conduct by employee, agent or independent contractor.

   a. An employer shall be liable for an unlawful discriminatory practice based upon the conduct of an employee or agent which is in violation of any provision of this section other than subdivisions one and two of this section.

   b. An employer shall be liable for an unlawful discriminatory practice based upon the conduct of an employee or agent which is in violation of subdivision one or two of this section only where:

      i. the employee or agent exercised managerial or supervisory responsibility; or

      ii. the employer knew of the employee's or agent's discriminatory conduct, and acquiesced in such conduct or failed to take immediate and appropriate corrective action; an employer shall be deemed to have knowledge of an employee's or agent's discriminatory conduct where that conduct was known by another employee or agent who exercised managerial or supervisory responsibility; or

      iii. the employer should have known of the employee's or agent's discriminatory conduct and failed to exercise reasonable diligence

              to prevent such discriminatory conduct.

    c.    An employer shall be liable for an unlawful discriminatory practice committed by a person employed as an independent contractor, other than an agent of such employer, to carry out work in furtherance of the employer's business enterprise only where such discriminatory conduct was committed in the course of such employment and the employer had actual knowledge of and acquiesced in such conduct.

114. Defendant "WHP" violated the section cited herein as set forth.

115. Defendant "WII" violated the section cited herein as set forth.

116. Defendant "PAE" violated the section cited herein as set forth.

### AS A SIXTH CAUSE OF ACTION
### FOR DISCRIMINATION UNDER STATE LAW

117. Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

118. Executive Law § 296 provides that, "1. It shall be an unlawful discriminatory practice: (a) For an employer or licensing agency, because of the age, race, creed, color, national origin, sex, or **disability**, or marital status of any individual, to refuse to hire or employ or to bar or **to discharge from employment** such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment."

119. Defendant "WHP" engaged in an unlawful discriminatory practice by discriminating against Plaintiff solely due to his disability/perceived disability.

120. Defendant "WHII" engaged in an unlawful discriminatory practice by discriminating against Plaintiff solely due to his disability/perceived disability.

15

121. Defendant "PAE" engaged in an unlawful discriminatory practice by discriminating against Plaintiff solely due to his disability/perceived disability.

## AS A SEVENTH CAUSE OF ACTION FOR DISCRIMINATION UNDER STATE LAW

122. Plaintiffs repeats and realleges each and every allegation made in the above paragraphs of this complaint as if set forth herein more fully at length.

123. New York State Executive Law §296(7) provides that it shall be an unlawful discriminatory practice: "For any person engaged in any activity to which this section applies to retaliate or discriminate against any person because he has opposed any practices forbidden under this article."

124. Defendants "PAE", "WHP" "WHII violated the section cited herein as set forth by terminating Plaintiff after he complained.

## JURY DEMAND

160. Plaintiff demands a trial by jury.

**WHEREFORE**, Plaintiff respectfully requests a judgment against the Defendants:

A. Declaring that the Defendants engaged in unlawful employment practices prohibited by the ADA, NYSHRL, and the NYCHRL, by discriminating against Plaintiff on the basis of his disability/perceived disability.

B. Awarding damages to Plaintiff, retroactive to the date of his discharge for all lost wages and benefits resulting from Defendants'", "WHP" "WHII and "JP" "ADP" and "DEMAR" unlawful termination of his employment and to otherwise make him whole for any losses

suffered as a result of such unlawful employment practice;

C. Awarding Plaintiff compensatory damages for mental, emotional distress, pain and suffering and injury to his reputation in an amount to be proven;

D. Awarding Plaintiff punitive damages;

E. Awarding Plaintiff attorneys' fees, costs, and expenses incurred in the prosecution of the action;

F. All such other and further relief as the Court deems just and proper.

G. Awarding Plaintiff such other and further relief as the Court may deem equitable, just and proper to remedy the Defendants "PAE", "WHP" "WHII and "JP" unlawful employment practices.


Dated: New York, New York
December 5, 2022

                                **SEKENDIZ LAW FIRM P.C., ATTORNEYS AT LAW**

By: \_\_\_s/Ismail S. Sekendiz/\_\_\_\_
Ismail S. Sekendiz, Esq. (IS-0509)
*Attorneys for Plaintiff*
45 Broadway Suite: 1420
New York, New York 10006
(212) 380-8087
Email: isinan@hotmail.com